DOLBEE *v.* DETROIT, YPSILANTI, ANN ARBOR & JACKSON RAILWAY.

1. CARRIERS — INJURIES TO PASSENGER — CAUSE — ELECTRICITY — EVIDENCE.
    In an action against an electric railway for injuries to a passenger, evidence examined, and *held*, not to tend to prove that plaintiff was injured by electricity.

2. SAME—ISSUES—VARIANCE.
    In an action by a passenger against an electric railway for personal injuries consisting of a broken arm alleged to have been caused by a current of electricity falling from a pole in too close proximity to the track or from the overhead appliances on defendant's road, evidence examined, and *held*, not to make a case within the averments of the declaration or the opening statement of plaintiff's counsel.

Error to Washtenaw; Kinne, J. Submitted April 6, 1906. (Docket No. 30.) Decided July 3, 1906.

Case by John V. Dolbee against the Detroit, Ypsilanti, Ann Arbor & Jackson Railway for personal injuries.

There was judgment for defendant on a verdict directed
by the court, and plaintiff brings error.. Affirmed.

Plaintiff, on August 6, 1904, was a passenger on one
of defendant's cars from Ypsilanti to Ann Arbor. He
was sitting on the left-hand side, in the rear seat of the
smoking room, next to the window, which was up. In
some way his left hand, which was next to the window,
received a severe injury. Plaintiff testified as follows:

"The bones of my wrist were broken in a number of
places. One of the breaks was on the bone of the forearm
running back from the thumb. One is on the back of the
hand. The last break is about 10 inches from the ends of
my fingers, and the first break about $4\frac{1}{2}$ or 5 inches from
the· end of the fingers. * * * It was badly out of
shape. The bones were all knocked in together. I do not
know whether you call it 'crushed' or not, but it was all
literally smashed."

He claims that the injury was the result of a shock of
electricity. He was taken to an eminent surgeon and
physician in the city of Ann Arbor, his bones set, and he
remained there several weeks under treatment. He did
not call the physician as a witness. He testified that he
was sitting close to the side of the car, his arm against
the casing, his head resting on his hand towards the rods
that ran across the window; that, while sitting in that
position, he raised his foot and placed it on a ridge below
the seat; and that was the last he remembered until some-
body picked him up over in the aisle. No one else in the
car received any shock. All the machinery and appara-
tus were found to be in perfect condition. His claim is
that the iron rods across the window became charged
with electricity, and that, when he placed his foot on the
ridge—whatever it was—under the seat, it formed the
circuit, and the electricity passed through his body. Sev-
eral theories of negligence and of the cause of the acci-
dent were advanced. In his original declaration he states
that the defendant "carelessly, recklessly, and negli-

gently placed its poles supporting the feed wires so near to the window of the car that they then and there struck the said plaintiff," etc. In his amended declaration he alleges negligence in "leaving the pole or poles so heavily charged and loaded with electricity so near the said tracks that his elbow then and there came in violent contact with the pole or poles, which were then and there so negligently and carelessly heavily loaded with electricity, and carelessly and negligently left so near to the tracks." Another theory was that the rods or rod along the window were not insulated, and became heavily charged with electricity. Still another theory was that the car came down the hill so fast that the trolley wheel jumped the wire, and that in consequence, electricity came from off the feed or trolley wire and overhead electrical appliances.

At the close of the plaintiff's case the court directed a verdict for the defendant, saying:

"There is in this case no positive evidence as to the cause of the injuries which the plaintiff received. I may state here that, while perhaps it is not important, I regret that Dr. Darling, a very prominent man, a physician and learned in his profession and the surgeon who was called immediately after this accident and who attended the plaintiff for some weeks, could not have been called so that we could have heard from him his view as to the probable cause of these injuries. However, for the purpose of this trial I shall accept the plaintiff's theory that the accident was due to the reception of a charge of electricity. If it was the law that negligence on the part of the railway company could be presumed from the bare fact that the plaintiff received a shock of electricity, then the plaintiff would be entitled to recover, but such a doctrine as that is opposed to all the laws of this State. The law is the other way.

"There is no evidence in this case that the railway company has been guilty of negligence or carelessness, either in the construction of its railway, or cars, or their equipment, nor in the operation, conduct, and management of its cars and system. So far as the evidence goes nothing is shown but that the railroad company has fully performed its duty in these respects. If this accident was

due to a shock of electricity, yet there has been no evidence as to what caused or occasioned it, there has been no evidence that the car or trolley wire or motive power was irregular or out of order, or that the propelling current of electricity was in any manner disarranged.

"If this accident was due to a shock of electricity it was incumbent upon the plaintiff to show the existence of this or that condition which might explain the accident, and to show that these conditions were due to the carelessness or negligence of the defendant railway company. This the plaintiff has failed to do. His inability so to do may be his great misfortune, but there is no remedy for it. So far as the evidence goes, if this accident was due to electricity, because of its escape or misdirection, or want of management of it, there is not a particle of light thrown upon that."

*Lee N. Brown*, for appellant.

*Corliss, Leete & Joslyn*, for appellee.

GRANT, J. (*after stating the facts*). There is no evidence tending to show that a shock of electricity of 600 volts, the voltage in use upon this car, would produce any such injury as that which the plaintiff received. Neither is there any evidence tending to show that any voltage would produce that result. The theory of his original declaration is reasonable. If his arm had been out of the window and struck the pole, which was within reach, his injury is easily explained. Plaintiff introduced witnesses who were familiar with electricity and the construction and use of trolley cars. No one had ever known these two guard rods along the windows to become charged with electricity. The ends were screwed into the wood, and had no connection with any of the electric wires or apparatus. Plaintiff's own expert testimony showed that these rods could not be charged with electricity from the poles or from the trolley. No other similar accident was shown. No defect was shown in the construction or management of the car. On the contrary an immediate examination showed the car and its appliances to be in

good condition, and nothing out of order. If the plaintiff's injury resulted from a shock of electricity, which is very doubtful, the record fails to show any reasonable theory for it, or any negligence on the part of the defendant which caused it. Verdicts cannot be based upon mere conjecture or guess.

The judgment is affirmed.

HOOKER, J., concurred with GRANT, J.

OSTRANDER, J. (*concurring*). The first count of the amended declaration avers that plaintiff was injured because of his arm being in contact with a pole, charged with electricity, standing near the track and car. The second count avers the injury to have been caused:

"By a bolt of electricity falling off from or coming off from the feed wire or trolley wire and overhead electric appliances used in propelling the said car, * * * said bolt of electricity coming down the side of said car * * * and entered the plaintiff's body."

In his opening to the jury, plaintiff's attorney said:

"We will show it happened by a current of electricity coming down the side of the car and entering the body of the plaintiff. * * * We will show you that the poles were so close to the car, when in motion, it would be almost impossible for a car to run along; those poles being so close to the car as they are when in motion and the poles charged with electricity. We will show you that they are, and that the result was that in passing that pole he was shocked."

Plaintiff testified on cross-examination as follows:

" *Q.* Did the pole come in contact with any part of your hand ?
" *A.* No, sir; the pole came in contact with nothing."

Again:

" *Q.* Did you have your hand outside the car ?
" *A.* No, sir; I did not."

I agree in affirming the judgment upon the ground that the testimony for the plaintiff does not tend to prove that

he was injured by electricity, and upon the further ground that the testimony did not tend to make a case within the averments of the declaration or the opening statement of counsel for the plaintiff. I am not clear that, under the circumstances disclosed, if the declaration had set out a case of injury by electricity and such injury was shown, plaintiff would be bound to account for the presence of the current of electricity in the car.

BLAIR and MONTGOMERY, JJ., concurred with OSTRANDER, J.